A05A0059. DANJOR, INC. et al. v. CORPORATE CONSTRUCTION, INC. et al.

(613 SE2d 218)

PHIPPS, Judge.

Cynthia and Keene Murphy, through their corporation, Danjor, Inc., became the franchisees and owners of a Kids R Kids daycare center. Danjor and the Murphys (referred to collectively as "the Murphy plaintiffs") brought this action against the franchisor, Patrick Vinson, two of his corporations, Kids R Kids International, Inc. (Kids) and Childish Creations, Inc. (Childish), and the company hired by Vinson to construct the daycare center, Corporate Construction, Inc. (CCI).

The Murphy plaintiffs seek recovery of damages for numerous construction defects on breach of contract, breach of warranty, and tort theories, based in part on allegations that they were intended third party beneficiaries of the construction contract between CCI and Vinson. The Murphy plaintiffs also sued CCI for breach of a builder's warranty transferred to them by Childish.

The trial court awarded summary judgment to all defendants, ruling, among other things, that there is no evidence to support the Murphy plaintiffs' claim that they were intended as third party beneficiaries of the construction contract; that, indisputably, CCI completed all repairs under the builder's warranty; and that the applicable statutes of limitation have run on the negligent construction and breach of warranty claims. We reverse as to the breach of warranty claim; we affirm as to the remaining claims.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. A defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its

pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2] Except for central issues as to whether CCI constructed the building in a negligent fashion and breached the builder's warranty, the facts are largely undisputed.

In 1994, Vinson acquired undeveloped land in Douglas County and placed a sign on it advertising his intent to construct a Kids R Kids daycare center for operation by a franchisee. The Murphys met with Vinson and were informed that he was going to have the daycare center constructed by James Hannewald. In February 1995, the Murphys, through Danjor, signed an agreement to operate the day-care center as a franchisee of Kids. Shortly after construction of the daycare center began in August or September 1995, Danjor signed an agreement to lease the daycare center from Vinson. Through assignment from Vinson, Childish later became lessor and owner of the daycare center. Although there was no option to purchase the daycare center in either the lease or the franchise agreement, Cynthia Murphy testified that Vinson had verbally agreed to sell the daycare center to the Murphys when they could arrange financing.

Soon after he began construction, Hannewald learned that the Murphys, through Danjor, were going to be the lessee. While construction was underway, the Murphys visited the site almost every day. Cynthia Murphy testified, however, that Hannewald "didn't like dealing with me at all" and "continually reminded me that he worked for [Vinson]." But the construction contract between Vinson and CCI contained a one-year builder's warranty (expiring one year from issuance of the certificate of occupancy), and the lease agreement provided for transfer of this warranty to Danjor. Construction of the daycare center was completed, and a certificate of occupancy for the building was issued, in January 1996.

According to the Murphys, beginning at a meeting on January 17, 1996, they began complaining to Vinson and Hannewald about problems with the building's framing and flooring, brick, gutter, and HVAC installation, grading, driveway construction, and soil compaction — all of which led to water intrusion into the building, cracking of ceiling and walls, and erosion of the grounds. According to the

[1] (Citations and punctuation omitted.) *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004).

[2] (Citation omitted.) *Costrini v. Hansen Architects, P.C.*, 247 Ga. App. 136 (543 SE2d 760) (2000).

Murphys, Vinson told them to bring all items needing repair to Hannewald's attention. A disagreement, however, arose between Hannewald and Cynthia Murphy, which resulted in Hannewald refusing to make any further repairs at her request. Afterward, the Murphys directed all repair requests to Vinson. But they assert that the construction defects were not repaired despite numerous requests by them. Nonetheless, they entered into an agreement to purchase the daycare center in January 1999, almost two years after expiration of the one-year builder's warranty. The Murphy plaintiffs brought this suit on January 8, 2002.

1. The Murphy plaintiffs contend that the trial court erred in ruling that there was no evidence that they were intended third party beneficiaries of the construction contract (and that they, therefore, lack standing to sue CCI for negligent construction).

> Implied in every contract by building contractors is the obligation to perform in a fit and workmanlike manner. This contract duty is breached when the builder fails to exercise a reasonable degree of care, skill, and ability under similar conditions and like surrounding circumstances as is ordinarily employed by others in the same profession.[3]

And under OCGA § 9-2-20 (b), "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." But

> [i]n order for a third party to have standing to enforce a contract under OCGA § 9-2-20 (b), it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit incidentally from performance of the agreement is not alone sufficient. There must be a promise by the promisor to the promisee to render some performance to a third person, and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary.[4]

It appears without dispute that Vinson, as the owner of Kids, entered into the contract for construction of a Kids R Kids daycare center, that the contract contained no generic reference to the franchisee of the daycare center or any specific reference to the Murphy

---

[3] (Punctuation and footnotes omitted.) *Nulite Indus. Co. v. Horne*, 252 Ga. App. 378, 379 (1) (556 SE2d 255) (2001).

[4] (Citations and punctuation omitted.) *Rowe v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 768 (1) (525 SE2d 123) (1999).

plaintiffs, that Hannewald did not learn of the Murphys' involvement until after construction had begun, and that Hannewald consistently took the position that he worked only for Vinson. Therefore, although Danjor was transferee of the construction contract's one-year builder's warranty under the lease with Vinson and later with Childish, the evidence does not support the Murphy plaintiffs' claim against CCI for negligent construction on a third party contract beneficiary theory. As a result, the trial court did not err in awarding summary judgment to CCI on the claim that CCI had negligently constructed the building in breach of the implied contractual duty owed to Vinson.

2. The Murphy plaintiffs contend that the trial court erred in ruling that their breach of warranty claim against CCI failed because CCI completed any and all repairs pursuant to the one-year warranty.

We agree that there are material issues of fact on the question of whether all repairs required by the builder's warranty were properly made. Defendants argue that they were nonetheless entitled to summary judgment on this claim because it was barred by the statute of limitation, as held by the trial court. But the trial court erred in so ruling.

CCI argues, and the trial court agreed, that the breach of warranty claim was subject to the four-year statute of limitation in OCGA § 9-3-30 (a). We disagree. "The statute of limitations which is applicable to [p]laintiffs' [claim for negligent construction] is found in OCGA § 9-3-30 (a). [Cits.] OCGA § 9-3-30 (a) provides that '(a)ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues.' [Cit.]"[5] But the claim for breach of the one-year warranty contained in the construction contract is subject to the six-year statute of limitation in OCGA § 9-3-24.[6] The six-year statute of limitation commenced to run from the date that CCI was notified of the alleged defects in the construction of the building,[7] which would have been sometime after January 17, 1996. The Murphy plaintiffs filed their complaint on January 8, 2002, before expiration of the six-year statute of limitation.

3. In reliance on *Knotts Landing Corp. v. Lathem*,[8] the Murphy plaintiffs argue that a promise by Vinson in a July 1998 letter to defray the cost of certain repairs to the daycare center induced them to enter into the agreement to purchase the daycare center and that

---

[5] *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 250 (1) (569 SE2d 495) (2002).

[6] *Nulite Indus. Co.*, supra, 252 Ga. App. at 380 (3); *Costrini*, supra, 247 Ga. App. at 136 (1).

[7] *Benning Constr. Co. v. Lakeshore Plaza Enterprises*, 240 Ga. 426, 429-430 (241 SE2d 184) (1977).

[8] 256 Ga. 321 (348 SE2d 651) (1986).

the promise is thus enforceable against Vinson under a promissory estoppel theory.

In the letter, however, Vinson made no such promise. He merely stated that he had been informed that Hannewald might be in breach of the construction contract, and that he intended to investigate the matter and implement a plan to resolve all of the issues "without any financial or other burden to you." In his deposition testimony, Keene Murphy acknowledged that he had interpreted this as an agreement by Vinson to get Hannewald to comply with his obligation to make the repairs, and not as an agreement by Vinson to pay for the repairs himself. We, therefore, find no merit in the argument that Vinson should have been denied summary judgment on this ground.

4. In reliance on Keene Murphy's testimony, the Murphy plaintiffs argue that they have a claim against Vinson for negligent construction based on the theory that he assumed control of the construction work.[9]

The trial court, however, correctly ruled that any claim for negligent construction was barred by the applicable four-year statute of limitation. Moreover, viewed most favorably to the Murphy plaintiffs, the relied-on testimony does not support their claim. Keene Murphy testified that, prior to construction of the daycare center, the Murphys had tried without success to talk Vinson into having the contractor install a retaining wall and that, after construction, Vinson had persuaded a subcontractor to make a repair to a security device which should have been covered by a product manufacturer's warranty. Keene Murphy did not contradict testimony by Vinson and Hannewald that CCI constructed the premises in accordance with plans and specifications provided by an outside architect and that Vinson did nothing more than visit the construction site periodically to see how construction of the building was progressing.

The trial court's award of summary judgment to CCI on the breach of warranty claim is reversed. The court's award of summary judgment to the defendants on all remaining claims is affirmed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Mikell, J., concur.*

DECIDED APRIL 11, 2005.

*Hill, Kertscher & Wharton, Blakely H. Frye, Peter F. Schoenthaler, Charles F. Peebles*, for appellants.

---

[9] See OCGA § 51-2-5 (5); *St. Paul Cos. v. Capitol Office Supply Co.*, 158 Ga. App. 748 (282 SE2d 205) (1981) (physical precedent only).

*Ellis, Painter, Ratterree & Bart, Tracy A. O'Connell, Samuel P. Pierce, Jr.,* for appellees.