# FOURTH DIVISION
## HODGES AND MARKLE, JJ.,
## and SENIOR APPELLATE JUDGE PHIPPS.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 25, 2021**

# In the Court of Appeals of Georgia

A19A0960. SOUTHERN STATES CHEMICAL, INC. et al. v.
TAMPA TANK & WELDING, INC. et al.

PHIPPS, Senior Appellate Judge.

In this long-running dispute, Southern States Chemical, Inc. and Southern States Phosphate and Fertilizer Co. (collectively, "Southern" or "Appellants") appeal from the trial court's grant of summary judgment in favor of defendants Tampa Tank & Welding, Inc. f/k/a Tampa Tank, Inc. ("Tampa Tank") and Corrosion Control, Inc. ("CCI"). Southern contends that the trial court erred in (1) applying the statute of repose for improvements to real property, OCGA § 9-3-51, to bar its claims for breach of contract; (2) ruling that its claims were barred by the statute of limitation; and (3) dismissing its claim for breach of contract per se.

In *Southern States Chemical, Inc. et al. v. Tampa Tank & Welding, Inc. et al.*, 353 Ga. App. 286 (836 SE2d 617) (2019) ("*Southern States III*"),[1] we affirmed the trial court's grant of summary judgment to Tampa Tank and CCI. In Division 2, we held that the only warranty under which Southern could seek damages was the express one-year warranty found in the contract between Southern and Tampa Tank. Id. at 290-292 (2). In Division 3, we concluded that the statute of repose barred Southern's contract and express warranty claims against Tampa Tank and CCI. Id. at 292-295 (3). In Division 4, we affirmed the trial court's ruling that Southern failed to exercise due diligence in discovering any asserted fraud. Id. at 295 (4). Because we concluded that Southern's claims were barred by the statute of repose, we declined to address any other arguments. Id. at 296 (5).

Southern filed a petition for writ of certiorari in the Georgia Supreme Court. While the petition was pending, the legislature amended the statute of repose applicable to improvements to real property to provide that it does not apply to actions for breach of contract. OCGA § 9-3-51 (c) (effective July 1, 2020). The

---

[1] This case has also appeared before this Court in two prior appeals. See *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, 331 Ga. App. XXVI (unpublished) (March 27, 2015) ("*Southern States I*") ; *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc. f/k/a Tampa Tank, Inc.*, 338 Ga. App. XXVIII (unpublished) (July 14, 2016) ("*Southern States II*") .

Supreme Court granted Southern's petition for certiorari, vacated our prior judgment, and remanded the case for reconsideration in light of the amendment. See Case No. S20C0690 (Aug. 10, 2020). Thus, we vacate Division 3 of our earlier opinion addressing the statute of repose and remand the case to the trial court to reconsider this ruling. The Supreme Court's order did not consider or address Divisions 2 and 4 of our original opinion, and thus Divisions 2 and 4 of our original opinion in *Southern States III* remain unchanged. We now address Southern's claim that the trial court erred in ruling that its contract claims were barred by the statute of limitation. For the reasons that follow, we conclude that Southern's claim for breach of the express one-year warranty is not barred by the statute of limitation, but its claim for breach of contract per se, if such a claim exists, is barred by the statute of limitation. Accordingly, we affirm in part, reverse in part, and remand the case with direction.

The relevant facts have been set forth in this Court's prior opinion:

> The record shows that Appellants manufacture, buy, sell, and store sulfuric acid in bulk at a facility in Savannah. In 2000, Appellants contacted Tampa Tank about renovating a 24-foot tall, 130-foot wide storage tank (the "[Duval] tank") that had previously stored molten sulfur, such that it would be suitable for storing up to 2.2 million gallons of sulfuric acid. Appellants and Tampa Tank engaged in contract negotiations for at least nine months. On August 21, 2000, a contract in

3

the form of a letter proposal drafted by Tampa Tank was signed and executed by . . . Southern States. Prior to January 2002, the parties also engaged in subsequent written change orders altering the contract. There is no merger clause in any of these documents.

The initial letter proposal between Tampa Tank and Appellants contained the following express one-year warranty provision: "All material and workmanship are guaranteed for a period of twelve (12) months from the date of completion of this work." . . . .

The [Duval] tank renovation was completed in January 2002. The renovation required Tampa Tank to install an impervious plastic ("HDPE") liner directly on top of the steel floor of the tank. Tampa Tank then welded a new steel floor above the old floor of the tank, and a layer of sand filled the gap between the old floor and the new floor. In order to prevent corrosion of the new floor, Tampa Tank installed a cathodic corrosion control system ("cathodic system") in the sand layer. Tampa Tank installed, but did not design, the cathodic system; it contracted with CCI to provide the design, materials, on-site technical assistance, and testing of the system.

During installation, Tampa Tank's foreman consulted with CCI over the phone regarding the installation of the magnesium strips of the cathodic system, but CCI did not assist with the installation onsite. CCI's contract with Tampa Tank only required it to design the cathodic system, procure the materials for its installation, and test the system once installed. Appellants contend that Tampa Tank misplaced

4

magnesium ribbons, which are a key component of the cathodic system, drove a Bobcat bulldozer over the sand layer after the ribbons were installed, which tampered with the integrity of the system, and failed to properly seal the new floor, which left it open to corrosive rainwater.

Appellants contend that CCI failed to properly test, design and commission the cathodic system. After the tank's renovation was substantially completed in January 2002, CCI performed a post-installation commissioning inspection of the cathodic system. The report resulting from that inspection indicated that the cathodic system was working and properly installed. However, the cathodic system and the sand layer it was installed upon had been covered up with steel plates by the time CCI arrived onsite to perform its inspection. CCI inspected the cathodic system when the tank was empty, and it was possible that a portion of the steel plates was not in contact with the sand layer during the testing because there was no liquid pressing the plates down into the sand. Appellants contend that CCI failed to properly test the cathodic system by neglecting to confirm that Tampa Tank kept the sand layer dry, by failing to verify that Tampa Tank had not driven a Bobcat over the floor, and by conducting an inspection when the tank was empty, which only put the cathodic system to limited use. Appellants also fault CCI for not having an engineer on-site to ensure that the corrosion protection system was installed properly. CCI made no warranty to Appellants about the tank. After inspection, CCI prepared a post-installation report concluding that the Duval Tank's cathodic system had been properly installed and was fully functioning. CCI sent the report to Tampa Tank, but not to Appellants.

5

On July 3, 2011, it was discovered that sulfuric acid was leaking from the base of the Duval Tank.

See *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, 331 Ga. App. XXVI, slip op. at 3-6 (unpublished) (March 27, 2015) ("*Southern States I*").

Southern first filed suit against Tampa Tank and CCI in January 2012, setting forth claims for, inter alia, breach of contract, based on a promise that the tank would last for 40 years, and negligence. The complaint was subsequently amended several times. In February 2014, the trial court granted Tampa Tank and CCI's motions for summary judgment, finding that all of Southern's claims were barred by the statute of repose, OCGA § 9-3-51, and denied Southern's motion for partial summary judgment on negligence per se based on a violation of OCGA § 43-15-24, the Professional Engineering Statute. In *Southern States I*, this Court reversed the trial court's grant of summary judgment in favor of Tampa Tank and CCI and remanded the case to the trial court to determine if the defendants were estopped from raising the statute of repose defense based on alleged fraud. *Southern States I*, slip op. at 11. Specifically, we instructed the trial court to determine if a genuine issue of fact existed as to whether Tampa Tank and CCI "fraudulently concealed any defects in the renovation, installation or testing" of the Duval Tank and whether Southern exercised

6

due diligence. *Southern States I*, slip op. at 11. This Court also found that, given the express one-year warranty in the contract between Tampa Tank and Southern, the parol evidence rule barred any evidence regarding an oral promise of a forty-year warranty. *Southern States I*, slip op. at 13-14. Finally, this Court reversed the trial court's denial of Southern's motion for partial summary judgment on its claim for negligence per se and remanded the case to the trial court with direction. *Southern States I*, slip op. at 18.

After the case was remanded to the trial court following *Southern States I*, Southern filed a fourth amended complaint which included numerous tort claims, claims for negligence per se and breach of contract per se based on violations of the Professional Engineering Statute, OCGA § 43-15-24, and, for the first time, a claim for breach of contract based on Tampa Tank's express one-year warranty.[2] In July 2015, the trial court found that there were genuine issues of material fact as to whether Tampa Tank and CCI made knowingly false statements to Southern and whether they had an intent to deceive Southern. The trial court nevertheless granted

---

[2] As part of its claim for breach of contract, Southern had previously asserted that it was the intended beneficiary of the contract between Tampa Tank and CCI, that CCI had promised, in its post-installation report, that the cathodic protection system would last 43-45 years, and that this promise was intended for Southern's benefit.

summary judgment to Tampa Tank and CCI because it found that, as a matter of law, Southern failed to exercise due diligence by never conducting annual testing of the cathodic system, such that Southern's claims of fraud failed. In short, the trial court found that Tampa Tank and CCI were not equitably estopped from asserting the statute of repose, all of Southern's claims were barred by the statute of repose, and Tampa Tank and CCI were entitled to summary judgment for this reason. In *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, 338 Ga. App. XXVIII, slip op. at 4 (unpublished) (July 14, 2016) ("*Southern States II*"), this Court affirmed the trial court's grant of summary judgment, finding that there was no evidence that Tampa Tank or CCI concealed information with an intent to deceive, as would be required to equitably estop the defendants from asserting the statute of repose as a defense. *Southern States II*, slip op. at 6-17.

Prior to the filing of the remittitur in the trial court, Southern filed a fifth amended complaint. In the fifth amended complaint, Southern asserted only three claims against the defendants: (1) a claim for breach of contract based on both the express one-year warranty in the contract with Tampa Tank and on the promises allegedly made by CCI in its post-installation report; (2) a claim for breach of contract per se for failing to have a licensed professional engineer approve the Duval

8

Tank plans and approve the work itself, as required under the Professional Engineering Statute, OCGA § 43-15-24; and (3) a claim for attorney fees and expenses of litigation under OCGA § 13-6-11. Tampa Tank filed a motion to dismiss, or, in the alternative, motion for summary judgment, and CCI filed a motion to strike, or, in the alternative, to dismiss, for judgment on the pleadings, or for summary judgment. Southern responded, and the matter proceeded to a hearing.

Assuming that the claims in the fifth amended complaint survived the trial court's July 2015 grant of summary judgment and this Court's affirmance of that order, the trial court found that the statute of repose barred all of Southern's claims, whether those claims sound in tort or in contract, including claims for breach of contract and breach of contract per se. The trial court further found that Southern's contract claims were barred by the statute of limitation and that the statute of limitation could not be tolled by fraud because there was no evidence of intent to conceal and because Southern failed to exercise due diligence. As to Southern's claim for breach of contract per se, the trial court found that no such cause of action had been recognized in Georgia, but even if breach of contract per se was a viable cause of action, the statute of limitation had run. Because Tampa Tank and CCI were entitled to summary judgment on Southern's substantive claims, the trial court also

9

granted summary judgment on the ancillary claim for attorney fees.[3] Once again, Southern appealed.[4] As set forth above, the case is now before us on remand from the Georgia Supreme Court. See Case No. S20C0690 (Aug. 10, 2020).

1. Southern contends that the trial court erred in finding that its breach of contract claims were barred by the statute of repose.

Effective July 1, 2020, while this case was pending on certiorari in the Georgia Supreme Court, the legislature amended OCGA § 9-3-51, the statute of repose for improvements to real property, to provide: "This Code section shall not apply to actions for breach of contract, including, but not limited to, actions for breach of express contractual warranties." OCGA § 9-3-51 (c). In its order granting Southern's petition for certiorari, the Georgia Supreme Court vacated our judgment and remanded the case

> for reconsideration in light of the enactment of Act 380 (formerly S.B. 451), which amended OCGA § 9-3-51 to provide that the statute does not apply to 'actions for breach of contract, including, but not limited to, actions for breach of express contractual warranties,' and which further

---

[3] Southern does not appeal this ruling.

[4] Southern initially appealed to the Georgia Supreme Court, purporting to invoke its jurisdiction over constitutional questions, but the Georgia Supreme Court transferred the appeal to this Court. See Case No. S18A1256 (Nov. 15, 2018).

provides that the act applies to causes of action which have accrued after January 1, 1968.

See Case No. S20C0690 (Aug. 10, 2020). Of course, we are bound by the Supreme Court's order. Accordingly, we vacate Division 3 of our opinion in *Southern States III* with respect to the statute of repose. Because the trial court has not yet had an opportunity to consider the amended version of OCGA § 9-3-51 and its impact, if any, on the instant case, we hereby vacate the portion of the trial court's order finding that the statute of repose barred Southern's contract claims against Tampa Tank and CCI, and we remand for the trial court to reconsider its summary judgment ruling in light of the recent amendment to OCGA § 9-3-51.[5]

2. Because we held in *Southern States III* that the statute of repose barred Southern's contract claims, we did not consider the trial court's alternate holding that these claims were also barred by the statute of limitation. We now address the statute of limitation.

_____

[5] After the Supreme Court granted Southern's petition for certiorari and remanded the case to this Court, the parties filed motions for leave to file supplemental briefs to address the amendment to the statute of repose and its application, if any, to this case. Given our remand to the trial court, these motions for leave to file supplemental briefs are denied as moot.

11

Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant of summary judgment, we apply a de novo standard of review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

As relevant here, the undisputed facts show that Tampa Tank and Southern entered into a contract in August 2000. The Duval Tank renovation was substantially completed by January 2002, *Southern States I*, slip op. at 4, and put into service that month. The leak was discovered in July 2011, and Southern informed Tampa Tank of the leak by October 2011. Southern filed the instant action in January 2012.[6]

(a) Southern first argues that the trial court erred in ruling that the statute of limitation bars its contract claims because, according to Southern, its claims that Tampa Tank and CCI breached their express warranties did not accrue until 2011 when the tank ruptured and the defendants abandoned their warranty obligations.

---

[6] See generally OCGA § 9-11-15 (c) ("Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.").

As set forth above, the contract between Tampa Tank and Southern contained the following express one-year warranty provision: "All material and workmanship are guaranteed for a period of twelve (12) months from the date of completion of this work."[7]

As a general rule, contract claims are subject to a six-year statute of limitation. See OCGA § 9-3-24; *Feinour v. Ricker Co.*, 255 Ga. App. 651, 653 (1) (566 SE2d 396) (2002) (listing cases applying the six-year statute of limitation to contract claims arising from construction contracts). The "six-year period begins to run on the date the contract is breached and the wrongful acts occur, not the date the actual damage results or is discovered." *Old Republic Nat. Ins. Co. v. Darryl J. Panella, LLC*, 319 Ga. App. 274, 276 (734 SE2d 523) (2012).

"With regard to tort claims and claims for breach of implied warranty and breach of the sale/construction contract, we have held that the applicable statutes of

---

[7] To the extent that Southern relies on additional warranties allegedly made by CCI in its post-installation report, this Court determined in Division 2 of *Southern States III* that Southern could not rely on such warranties. See *Southern States III*, 353 Ga. App. at 290-292 (2). Because the Supreme Court neither addressed nor considered Division 2 of *Southern States III* in its order granting Southern's petition for certiorari, and Division 2 is not inconsistent therewith, Division 2 of *Southern States III* remains unchanged. See, e.g., *Shadix v. Carroll County*, 274 Ga. 560, 563-564 (1) (554 SE2d 465) (2001); *Pounds v. Brown*, 312 Ga. App. 189, 189 (721 SE2d 905) (2011).

limitation begin to run on the date of substantial completion[.]" *Feinour*, 255 Ga. App. at 653 (1); accord *Wilks v. Overall Constr., Inc.*, 296 Ga. App. 410, 412 (1) (674 SE2d 320) (2009) (noting that "an action for breach of a written construction contract must be filed within six years after the work has been substantially completed"). However, we "treat the start date for the breach of express warranty claim differently." *Feinour*, 255 Ga. App. at 653 (1). For breach of an express warranty, the six-year statute of limitation runs from the date that the defendant was notified of the alleged defects. *Danjor, Inc. v. Corp. Constr., Inc.*, 272 Ga. App. 695, 698 (2) (613 SE2d 218) (2005); accord *Feinour*, 255 Ga. App. at 653-654 (1); *Clonts v. Scholle*, 172 Ga. App. 721, 722 (1) (324 SE2d 496) (1984); see also *Benning Constr. Co. v. Lakeshore Plaza Enterprises, Inc.*, 240 Ga. 426, 429 (241 SE2d 184) (1977) (holding that there can be no breach of a warranty until defendant is notified of alleged defects in construction).

Under this rule, the statute of limitation on Southern's claim for breach of the express one-year warranty began to run in 2011 when Southern notified Tampa Tank of the leak. See *Danjor*, 272 Ga. App. at 698 (2); *Feinour*, 255 Ga. App. at 653-654

(1); *Clonts*, 172 Ga. App. at 722 (1). Accordingly, the six-year statute of limitation had not yet run when Southern filed its complaint in January 2012.

The trial court concluded that the statute of limitation began to run upon the substantial completion of the tank, relying on *Gropper v. STO Corp.*, 250 Ga. App. 820, 823 (1) (552 SE2d 118) (2001). But in *Gropper*, the plaintiffs did not rely on any express warranty. See id at 823-824 (1), (2). Rather, *Gropper* "focused primarily on the statute of limitation start date for breach of an *implied* warranty and did not specifically analyze the start date for breach of an *express* warranty to repair and replace." *Feinour*, 255 Ga. App. at 654-655 (1) (emphasis in original).

We also note that although the express one-year warranty expired in January 2003, one year after the tank renovation was substantially completed in January 2002, this does not necessarily bar Southern's claims. In *Nulite Indus. Co., LLC v. Horne*, 252 Ga. App. 378 (556 SE2d 255) (2001), we held that the expiration of the warranty period did not bar the filing of a claim for breach of warranty when it was undisputed that the defects occurred during the warranty period. Id. at 380 (3). Here, the parties dispute the cause of the leak. But Southern has presented evidence that CCI failed to properly design and test the tank's cathodic system and Tampa Tank failed to properly install the tank. Viewing the evidence in the light most favorable to

15

Southern, a jury could find that the defects were present from the time the tank was substantially completed, such that any defects occurred during the one-year warranty period. See *Nulite,* 252 Ga. App. at 380 (3) (finding that when defects occurred during the one-year warranty period, the expiration of the warranty period did not bar plaintiff's claim); see also *Danjor*, 272 Ga. App. at 698 (2) (holding that six-year statute of limitation from OCGA § 9-3-24 is applicable to claim for breach of express one-year warranty); *Clonts*, 172 Ga. App. at 722 (1) (same). *Fort Oglethorpe Assoc. II, Ltd. v. Hails Constr. Co. of Ga.*, 196 Ga. App. 663 (396 SE2d 585) (1990), relied upon by the trial court, does not require a different result. In that case, the record showed that the defect (a leaking roof) occurred after the expiration of the one-year warranty period. Id. at 664 (2).

Accordingly, we reverse the portion of the trial court's order holding that the statute of limitation had run on Southern's claim for breach of contract under the express one-year warranty.

(b) Southern next argues that the trial court erred in applying a "heightened standard" of fraud to rule that, as a matter of law, Tampa Tank and CCI had not committed fraud sufficient to toll the statute of limitation.

16

Where "the gravamen of the underlying action is not a claim of fraud," the statute of limitation "is tolled only upon a showing of a separate independent actual fraud involving moral turpitude which deters a plaintiff from filing suit." *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 388 (4) (649 SE2d 779) (2007); accord *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847 (1) (507 SE2d 411) (1998).

> In such cases, before the running of the limitation period will toll, it must be shown that the defendant concealed information by an intentional act – something more than a mere failure, with fraudulent intent, to disclose such conduct [–] unless there is on the party committing such wrong a duty to make a disclosure thereof by reason of facts and circumstances, or the existence between the parties of a confidential relationship.

*Hunter, Maclean, Exley & Dunn*, 269 Ga. at 847 (1) (punctuation and footnote omitted). Importantly, "where the plaintiff shows fraud sufficient to toll the statute of limitation[,]" a defendant also can be equitably estopped from asserting the statute of repose. *Wilson v. Obstetrics & Gynecology of Atlanta, P.C.*, 304 Ga. App. 300, 305 (2) (696 SE2d 339) (2010).

In our prior opinion, we held that Tampa Tank and CCI could not be equitably estopped from asserting the statute of repose because there was no evidence that

17

Tampa Tank or CCI made any statements with an intent to deceive or an intent to conceal any injury or wrongdoing. *Southern States II*, slip op. at 6-17 (1). Under the law-of-the-case rule, appellate rulings are binding in all subsequent proceedings, unless the evidentiary posture of the case changes. *Cohen v. Rogers*, 338 Ga. App. 156, 163 (1) (789 SE2d 352) (2016); see OCGA § 9-11-60 (h). Thus, to the extent that Southern's claim of error is not rendered moot by our ruling in Division (2) (a), we affirm the trial court's ruling that there are no genuine issues of material fact showing that Tampa Tank or CCI made any statements with the intent to conceal wrongdoing or injury, as would be necessary to toll the statute of limitation.

(c) Southern also argues that the trial court erred in ruling, as a matter of law, that it did not exercise due diligence to discover any alleged fraud. Once again, to the extent that Southern's claim of error is not rendered moot by our ruling in Division (2) (a), we previously rejected this claim in *Southern States III*, 353 Ga. App. at 295 (4). Because the Supreme Court neither addressed nor considered Division 4 of *Southern States III* in its order granting Southern's petition for certiorari, and Division 4 is not inconsistent with the Supreme Court's order, Division 4 of *Southern States III* remains unchanged. See, e.g., *Shadix v. Carroll County*, 274 Ga. 560, 563-

18

564 (1) (554 SE2d 465) (2001); *Pounds v. Brown*, 312 Ga. App. 189, 189 (721 SE2d 905) (2011).

3. Finally, Southern argues that the trial court erred in dismissing its claim for breach of contract per se.

Pretermitting whether breach of contract per se is a valid claim under Georgia law, we agree with the trial court that such a claim would be subject to the general six-year statute of limitation applicable to contract claims. See OCGA § 9-3-24. Whether we begin the running of the statute of limitation from the date of the contract in 2000 or the date of substantial completion in 2002, the six-year statute of limitation had run well before Southern filed the instant action in 2012. Accordingly, this portion of the trial court's order is affirmed.

In summary, we affirm the trial court's rulings that there is no genuine issue of material fact showing that Tampa Tank or CCI made any statements sufficient to toll the statute of limitation; that, as a matter of law, Southern did not exercise due diligence; and that the statute of limitation had run on Southern's claim for breach of contract per se, even if such a claim exists. We reverse the trial court's ruling that the statute of limitation had run on Southern's claim for breach of contract based on the express one-year warranty. We vacate the trial court's ruling that the statute of repose

bars Southern's contract claims, and we remand the case to the trial court to reconsider this portion of its ruling in light of the amended statute.

*Judgment affirmed in part; reversed in part; and case remanded with direction.*

*Markle and Hodges, JJ., concur*.