## A10A1002. SMITH v. HILLTOP POOLS AND SPAS, INC.
### (703 SE2d 424)

DOYLE, Judge.

Matthew L. Smith appeals from the trial court's grant of summary judgment to Hilltop Pools and Spas, Inc. ("Hilltop"), arguing that the trial court erred by finding that Smith's negligence and contract claims were barred by the statute of limitation and that Smith failed to produce any evidence of fraud or deceit (and thereby rescission on the basis of fraud). For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable

---

[13] (Citations and punctuation omitted; emphasis supplied.) *Corhen*, 306 Ga. App. at 502 (4).

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record before us reveals that Smith entered into a contract with Hilltop in early February 2001, for construction of an in-ground swimming pool. Hilltop contracted with Wayne Younger to excavate the area, and during excavation, Younger discovered garbage fill in the area, which would cost extra to remove. Smith agreed to the extra expense, and Smith surveyed the area with Younger, at which time Younger told Smith all the garbage had been removed. Smith recalled that Younger had re-buried the trash approximately 30 to 40 feet away from the pool site, and Smith did not recall seeing any trash in the original trash pit after Younger completed the excavation. A Hilltop representative swore that he did not knowingly represent any fraudulent information concerning removal of the garbage and did not make any representation to Smith that was false or intended to deceive Smith about garbage remaining in the pool site.

Smith deposed that in August 2001, Hilltop had installed the liner for the pool, but the pool was unlevel, which was visually apparent from the tile pattern on the pool liner. Smith also deposed that the pool was usable at that time, but Hilltop agreed to return to the residence in February 2002, reassess the leveling situation, and change the liner at that time. Additionally, the parties agreed that Smith could withhold the final payment on the contract of approximately $1,300 and that Hilltop would begin changing the liner by February 28, 2002, would complete the work within 28 days, and would compensate Smith $150 per day for which the liner replacement was incomplete. It is undisputed that the liner replacement was never completed, although Smith met with a representative from Hilltop in May 2002, and Smith never remitted the final payment of the contract to Hilltop. Despite the unlevel appearance of the water in the pool, Smith deposed that he utilized the pool for swimming during warm months of the year, beginning in August 2001, until one wall of the pool collapsed in September 2004.

Smith deposed that the pool was unusable after September 2004, but he did not file suit against Hilltop until October 8, 2007. Hilltop filed a motion for summary judgment, contending that the claims against Hilltop should be dismissed because the applicable statutes of limitation had expired and because Smith had failed to produce evidence of fraud by Hilltop. The trial court agreed with Hilltop and granted the motion. Smith now appeals.

---

[1] (Punctuation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. Smith argues that the trial court erred by finding that his breach of contract and negligence claims were barred by the six-year statute of limitation. Specifically, Smith contends that the trial court erroneously relied on the date the contracted-for work was "substantially completed" as the date from which the statute of limitation began to run, and Smith argues instead that the date on which the final payment becomes due and payable is the appropriate date from which the statute began to run. Smith also contends that the parties mutually agreed to extend the contract until February 28, 2002, and the complaint was timely filed in October 2007, prior to expiration of the statute of limitation in February 2008. We disagree.

"Generally, whether a cause of action is barred by the statute of limitation is a mixed question of law and fact. Where the facts are in dispute, the question is one of fact to be determined by the trier of fact, but where the facts are not disputed, the question is one of law for the court."[2]

All actions upon simple contracts in writing shall be brought within six years after the same become due and payable. Based on this statute of limitation, this Court has held that an action for breach of a written construction contract must be filed within six years after the work has been substantially completed. Substantial completion means the date when construction was sufficiently completed, in accordance with the contract as modified by any change order agreed to by the parties, so that the owner could occupy the project for the use for which it was intended.[3]

Substantial completion triggers the time to file an action because the "damage to the property arising out of faulty construction . . . normally is ascertainable . . . at that time."[4]

The trial court determined that Hilltop substantially completed the project by August 2001, when Smith deposed that the pool was usable, and his only concern with the construction was that the pool was not level, and the tile pattern of the pool liner made this visually apparent and aesthetically displeasing. Although the parties exchanged correspondence in which Hilltop promised to change the liner in February 2002, the trial court determined that this agree-

---

[2] (Punctuation omitted.) *McGhee v. Jones*, 287 Ga. App. 345, 347 (2) (652 SE2d 163) (2007).

[3] (Punctuation and footnotes omitted.) *Wilks v. Overall Constr.*, 296 Ga. App. 410, 412 (1) (674 SE2d 320) (2009).

[4] *Scully v. 1st Magnolia Homes*, 279 Ga. 336, 338 (1) (614 SE2d 43) (2005).

ment did not serve to change the trigger date for the statute of limitation because the pool served the purpose for which it was constructed beginning in August 2001. We agree and affirm.

Smith argues that while a construction contract's "substantial completion" date normally is the date from which an action becomes "due and payable," in this case, the extension until February 2002 of the agreement to replace the liner delayed the trigger date for the contract to be due and payable, as evidenced by the parties' mutual agreement for Smith to withhold the final payment under the contract until that time. For support, Smith relies on *Wallace v. Bock*,[5] in which the Supreme Court of Georgia explained that "the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."[6] Here, the alleged breach occurred when Younger failed to adequately excavate the trash in the area around the pool, and Hilltop completed installation of the pool overtop, not when Hilltop failed to replace the liner in February 2002. It is undisputed that by August 2001, it was apparent to Smith that the pool was unlevel, regardless of whether the problem appeared to be merely cosmetic or evidence of a more serious structural issue, and Smith could have immediately ascertained that there was some injury, which was potentially a result of Hilltop's breach of the construction contract.[7] Thus, the right of action had accrued by the time that Hilltop removed its workers from the site in August 2001, and the agreement to replace the liner and assess the pool level in the spring or the delay (and eventual nonpayment) of the final $1,300 of the contract did not serve to extend the "due and payable" date until February 2002.[8]

Accordingly, the trial court correctly determined that the statute of limitation for contract actions expired prior to the date upon which Smith filed his complaint. Moreover, because the same six-year limitation period applies to Smith's claims for breach of express and implied warranties, the trial court's grant of summary judgment as to those claims also was appropriate.[9]

2. Smith also argues that the trial court's grant of summary judgment on his fraud and misrepresentation claims was improperly

---

[5] 279 Ga. 744, 747-748 (2) (620 SE2d 820) (2005).

[6] (Punctuation omitted.) Id. at 747 (2).

[7] See, e.g., *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (2) (569 SE2d 495) (2002); *Wilks*, 296 Ga. App. at 413 (1).

[8] Compare with *Wallace*, 279 Ga. at 747-748 (2).

[9] See *Colormatch*, 275 Ga. at 254 (4); *Gropper v. STO Corp.*, 250 Ga. App. 820, 823-824 (2) (552 SE2d 118) (2001) (holding that "the limitation period [for any breach of warranty claims based upon either express or implied contracts arising in connection with the construction contract] began to run at the time . . . of substantial completion").

based on the trial court's erroneous finding that Smith presented no evidence of false claims or specific intent to deceive.

In support of his contention, Smith provided the affidavit of Dan Rankin, an owner and operator of a pool installation business, who testified that any representation by Hilltop that the structural issues were the result of normal settling was "utterly false." Rankin further affirmed that Hilltop employees, as experienced pool installers, would be aware that the problem was not cosmetic and not normal settling at the time they purportedly made such statements to Smith, and they would have known there was a serious problem with the foundation of the pool; any representations by Hilltop employees that the problem could be resolved by changing the vinyl liner was "false and misleading . . . and likely lulled . . . Smith into a false sense of security with respect to the structural integrity of the pool. . . ."

Smith contends that this was sufficient evidence from which a jury could find that Hilltop fraudulently misrepresented or concealed facts about the state of the pool, and the trial court therefore erred by granting the motion for summary judgment as to these claims. We disagree and affirm.

> Fraud claims are governed by a four-year statute of limitation,[10] . . . but this limitation period may be tolled if [Hilltop] committed an act of actual fraud that had the effect of concealing from [Smith] the existence of the cause of action despite its exercise of reasonable diligence. Actual fraud involves moral turpitude, and requires an intentional deception by false representation or by concealment of a fact. When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud. When the defects in the property are of such a nature that the [owner] could not discover them through the exercise of due diligence, the burden is on the [contractor] to disclose the seriousness of the problems of which he is aware, provided that the [contractor] knows that the [owner] is acting under a misapprehension as to facts which would be important to the buyer in making his decision.[11]

---

[10] OCGA § 9-3-31.

[11] (Citations and punctuation omitted.) *Ramey v. Leisure, Ltd.*, 205 Ga. App. 128, 129-130 (1) (421 SE2d 555) (1992).

We agree with the trial court's conclusion that Smith has not presented sufficient evidence of fraud. Smith himself deposed that Younger, the independent contractor hired by Hilltop to remove the trash deposit, told Smith that he had completely removed the trash from the pool location. Smith did not present any evidence that Younger informed Hilltop differently or that Hilltop had reason to know that trash remained in the location, and Smith himself also deposed that he did not see anything in the location after Younger completed his excavation.[12]

Although Smith presented Rankin's affidavit, in which Rankin theorized that Hilltop intentionally lied to Smith when its representatives failed to explain that the unlevel appearance of the pool liner was more than an aesthetic problem, that the unlevel appearance indicated an underlying structural problem, and that Hilltop's conduct amounted to fraud, the affidavit is insufficient to create a jury issue as to whether Hilltop's representatives knew their representations were false.[13]

3. Finally, Smith contends that the trial court erred by granting the motion for summary judgment as to his claims of punitive damages and expenses of litigation because the grant was based on the trial court's erroneous holdings that Smith lacked any viable underlying claims. Based on our holdings in Divisions 1 and 2 of this opinion, we affirm the trial court's grant of summary judgment on these claims.[14]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[12] See *Costrini v. Hansen Architects, P.C.*, 247 Ga. App. 136, 138 (2) (543 SE2d 760) (2000) (no evidence of fraud based on plaintiff's allegations that builder "deterred [the plaintiff] from bringing the suit because [the builder] denied liability and told [the plaintiff] that the water problems" were not caused by the builder but by others). Compare with *Ramey*, 205 Ga. App. at 130 (1) (jury's verdict determining that contractor committed fraud by passively concealing improperly laid footing was supported by evidence that the contractor was on the site multiple times during construction of the footing, the contractor admitted to seeing the obviously improperly shaped footing, and the contractor failed to notify the building inspector of completion of the footing prior to pouring concrete over the trenches, concealing the improper construction from the inspector).

[13] See *McGraw v. Smith*, 232 Ga. App. 513, 515 (2) (502 SE2d 347) (1998) ("it is well established that an expert witness may not state a legal conclusion as to the ultimate issue"); *Lasoya v. Sunay*, 193 Ga. App. 814, 816 (1) (389 SE2d 339) (1989) (holding that testimony showing the defendant should have known that performing a biopsy of the fallopian tube in the manner in which he performed it would render the plaintiff sterile – rather than her sterility being caused from the "diseased condition" of the fallopian tube as the defendant testified – "only raise[d] an inference of negligence, not of fraud").

[14] *Pollman v. Swan,* 305 Ga. App. 369, 375 (4) (699 SE2d 582) (2010) (because the trial court correctly granted summary judgment on [the plaintiff]'s fraud claims, "it follows that punitive damages are not supportable"). See *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 40 (1) (643 SE2d 324) (2007) (claims for attorney fees and damages survive only with survival of underlying tort action).

DECIDED NOVEMBER 19, 2010.

*Philip S. Coe*, for appellant.
*Hall, Booth, Smith & Slover, Jonathan Marigliano, Rush S. Smith III, Charles M. Gisler*, for appellee.